IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ESTELLE ANN MAKOWSKI,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 16-1656 (JBS)

**OPINION**

APPEARANCES:

Agnes S. Wladyka, Esq.
1122 Route 22 West
Mountainside, NJ 07092
    Attorney for Plaintiff Estelle Ann Makowski

Erica Marie Adams, Esq.
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
300 Spring Garden Street, 6th Floor
Philadelphia, PA 19123
    Attorney for Defendant Commissioner of Social Security

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This matter comes before the Court pursuant to 42 U.S.C. §
405(g) for review of the final decision of the Commissioner of
the Social Security Administration denying Plaintiff Estelle Ann
Makowski's application for disability benefits under Title II of
the Social Security Act, 42 U.S.C. § 401, et seq. Plaintiff, who
suffers from arthritis of the lumbar spine and left knee and

obesity, was denied benefits for the period beginning September
11, 2011, the alleged onset date of disability, to September 18,
2014, the date on which the Administrative Law Judge ("ALJ")
issued a written decision.

In the pending appeal, Plaintiff argues that the ALJ's
decision must be reversed and remanded on three grounds.
Plaintiff contends that the ALJ erred in (1) failing to take
into account the impact of mild limitations with regard to
Plaintiff's ability to maintain activities of daily living,
social functioning, and concentration, persistence, or pace at
step four of the sequential analysis; (2) failing to include the
need for a sit-stand as part of Plaintiff's residual functioning
capacity ("RFC") assessment; and (3) failing to impose any
manipulative limitations as part of Plaintiff's RFC assessment.
For the reasons stated below, this Court will affirm the ALJ's
decision denying Plaintiff disability benefits.

## II. BACKGROUND

### A. Procedural History

Plaintiff Estelle Ann Makowski filed an application for
disability insurance benefits on July 6, 2012, alleging an onset
of disability as of September 11, 2011. (R. at 27.) On November
21, 2012, the Social Security Administration ("SSA") denied the
claim, and upon reconsideration on February 15, 2013. (Id.) A
hearing was held on April 16, 2014 before ALJ Mark G. Barrett,

2

at which Plaintiff appeared with counsel and testified. (Id.) On September 18, 2014, the ALJ denied Plaintiff's appeal at step four of the sequential analysis, finding that Plaintiff could perform her past relevant work as bookkeeper. (R. at 37.) The Appeals Council denied Plaintiff's request for a review and Plaintiff timely filed the instant action. (R. at 1-7.)

**B. Medical History**

The following are facts relevant to the present motion. Plaintiff was 60 years old as of the date of the ALJ Decision and had graduated from high school. Plaintiff had work experience as a bookkeeper. (R. at 391.)

**1. Physical Impairments**

Plaintiff filed a claim for disability insurance benefits, alleging that she suffered from "severe lumbar facet osteoarthritis with mild spondylitis, asthma, multi-site osteoarthritis, high blood pressure, hypoactive thyroid, high cholesterol, type II diabetes, spinal stenosis, spondylitis, nerve impingement o[f] right shoulder, [and] degenerative disc disease." (R. at 380.)

In December of 2009, Plaintiff complained of low back pain and leg pain that "bothers her if she has to stand in one place for too long" and knee pain developing over the previous few months. (R. at 473-74.) Plaintiff exhibited some signs of rotator cuff tendonitis in her left shoulder. (R. at 474.) Dr.

3

Flagg noted that Plaintiff has bilateral carpal tunnel syndrome but "does not have much in the way of symptoms there currently." (Id.) Diagnostic radiographic imagery taken around the same time showed mild osteoarthritis in her left knee and severe osteoarthritis in the lumbar spine, mild degenerative spondylolisthesis of L4 on L5, and mild disc degeneration at L2-3, L4-5 and to a lesser extent at L5-S1. (R. at 476-479.) Plaintiff underwent physical therapy for osteoarthritis in her shoulders and knees and lumbago in her spine in the spring of 2010. (R. at 484-503.) Upon discharge, muscle testing showed 4/5 and 5/5 strength in her upper extremities, +4/5 and 5/5 on hip flexion, 4/5 and 5/5 in knee extension, and +4/5 and 5/5 on knee flexion, and reduced but improving range of motion in her spine. (R. at 484.)

Plaintiff's next medical records come from March of 2012, when Dr. Cincotta, her regular treating physician, performed a medical report on behalf of the State of New Jersey Division of Vocational Rehabilitation Services. (R. at 508.) Dr. Cincotta opined that Plaintiff could work full time "with restrictions." (R. at 508.) He noted that "she will be fine if sitting." (Id.) He recommended that "Lifting, twisting, and standing for long period of time would be the only restriction. The ability to stand and stretch from time to time would be important." (Id.) Plaintiff rated her pain as "0" on a scale of 0-10. (R. at 509.)

4

At a follow-up exam in October 2012, Dr. Cincotta noted that Plaintiff's range of motion was "decreased," but that she had normal range of motion, muscle strength, and tone in her extremities. (R. at 542.) He recommended aspirin for Plaintiff's back pain. (R. at 538.) He also prescribed Plaintiff medication for Type II diabetes, hypertension, and hyperlipidia. (R. at 533-34.) These conditions appeared to improve with medication. (R. at 538, 543, 547.)

In June of 2012, a physical therapist, providing a report for the same state agency, similarly rated Plaintiff as capable of "sedentary plus" work and opined that she could sit for 5-6 hours in a 55 minute duration, stand for 1-2 hours in a 15 minute duration, and walk for 3-4 hours for "occasional long distances." (R. at 510-515.) She could also frequently perform simple grasping with both hands and occasionally perform firm or fine grasping with both hands, and reported no pain in her hands during her examination. (R. at 512, 513.) As part of another evaluation in December of 2012, Dr. Cincotta indicated that Plaintiff should not exceed these restrictions. (R. at 667-68.)

In October 2012, Dr. Wilchfort prepared consultative examination for the state agency. (R. at 547-581.) Plaintiff reported "occasional back pain, particularly with prolonged standing of more than 20-30 minutes or sitting more than 2 hours." (R. at 574.) She complained of diabetes but reported no

complications, and of asthma brought on by cold weather, mold, and certain chemicals without requiring hospitalizations. (Id.) Upon examination, Plaintiff walked and squatted normally, had normal range of motion and muscle strength in her extremities and spine, and had grip strength and pinch strength rated 5/5 in both hands. (R. at 574, 578.)

In July of 2013, Plaintiff complained of neck and left shoulder pain and tingling and numbness in both hands. (R. at 740.) Imaging of her cervical spine showed degenerative disc disease at C5-6. (R. at 666.) Stretching, acupuncture, and massage were recommended after Plaintiff refused physical therapy. (R. at 699-724, 728-31, 740.)

In October of 2013, R. Hallowell, a nurse practitioner, completed another disability evaluation for Plaintiff, noting that Plaintiff reported numbness in her hands and pain in her neck, left shoulder, and back. (R. at 679.) She rated Plaintiff as able to frequently sit and occasionally stand and walk, and frequently able to engage in fine finger movements and hand-eye coordinated movements with both hands. (R. at 680.)

Dr. Masangkay evaluated Plaintiff for complaints of hand numbness. (R. at 838-39.) An EMG examination revealed mild carpal tunnel syndrome in both hands but no evidence of a cervical radiculopathy or other general neuromuscular disorder in the upper extremities. (R. at 839.) Dr. Masangky rated

6

Plaintiff as having normal strength in her arms, normal
sensation of touch, and normal symmetrical reflexes in both
arms. (Id.) A physical exam on December 3, 2013, in which
Plaintiff complained of "multiple somatic vague pain" in the
shoulder and back was noted as "unremarkable." (R. at 709.)

### 2. Mental Impairments

Plaintiff received outpatient therapy with Cape Counseling
Services in 2009 when she was "feeling overwhelmed and anxious"
about a lawsuit and family problems. (R. at 676-77.) She was
discharged because she achieved her treatment goals. (Id.)
Plaintiff generally reported at her following physical
examinations that she felt well: at the end of October 2011,
Plaintiff reported that she "feels well generally," and in
January 2012, Plaintiff denied any anxiety, depression, or other
mental problems to her primary care physician but reported that
she was "under a lot of stress." (R. at 526, 531-32.) Likewise,
in November 2012, Plaintiff reported to Dr. Cincotta that she
was felling "well generally." (R. at 544-45.)

In October 2012, Dr. Iofin performed a psychological
consultative examination for the state agency. (R. at 582-85.)
Dr. Iofin diagnosed her with "adjustment disorder with
disturbance of emotions" and a GAF of 68. (R. at 584-85.)
Plaintiff denied any significant psychiatric, affective, manic,
or anxiety symptoms. (R. at 584.) Dr. Iofin observed that

Plaintiff was "very pleasant" and "maintained excellent eye contact," that she had a logical thought processes, and that she displayed normal impulse control. (Id.) Plaintiff was able to recall 3 out of 3 words immediately and five minutes later; repeat 7 digits forward and 5 digits backward; spell "table" backwards without difficulty; do "good quality" serial 7s; and put Presidents in order. (Id.)

Plaintiff resumed counseling at Cape Counseling Services again in April of 2013. (R. at 628-65.) Plaintiff was diagnosed with "adjustment disorder with mixed anxiety and depressed mood" after describing symptoms including "stress, anxiety, depression, fatigue, insomnia, racing thoughts, feeling overwhelmed, poor focus, some lack of motivation, feeling scared regarding the future, anger." (R. at 628-29.) She reported that "financial problems" are a stressor. (R. at 629.) Although Plaintiff used "pressured speech" to describe her financial problems, her therapist noted normal tone and clarity, organized and goal-directed thought processes, and that Plaintiff maintained eye contact and was "pleasant." (R. at 633-34.) Plaintiff was given a GAF score of 60 and assessed as needing only a "low" level of outpatient care. (R. at 636.)

Plaintiff also saw Dr. Zielinski, a psychiatrist at Cape Counseling, where he noted that she "present[ed] for evaluation with the purpose of applying for disability." (R. at 645.)

Plaintiff reported that she wanted "to address the stress of the multiple problems that have lead [sic] to her current financial issues" and that "the situations that followed her have now stressed her to the point that she is crippled with psychiatric symptoms," including depression, poor sleep, and anxiety. (R. at 644.) Dr. Zielinski noted that Plaintiff was "well kempt" and cooperative, that she described her mood as "good most of the time," that her memory is "excellent" and her concentration intact, and that she "is alert and oriented to time, place and person." (R. at 647.) However, he also noted that her "thought content seems stuck – she is unable to offer solutions and becomes frustrated" and that "she cannot focus on a question without repeated redirection." (Id.) Dr. Zielinski assigned Plaintiff a GAF level of 65 and did not prescribe medication. (R. at 647-48.)

Plaintiff received talk therapy at Cape Counseling with Linda DeSantis, Mdiv, LPC, whom she saw a handful of times between September 9, 2013 and November 14, 2013. (R. at 681.) Ms. DeSantis noted in a report for Plaintiff's insurer that her symptoms included "extreme sadness, labile mood marked by attempts to resist tearfulness," "depressed mood marked by lack of energy, with periods of poor concentration, lack of motivation and anhedonia," "sleep disturbances with racing thoughts and fears," and "anxiety about needed medical testing,

procedures, surgeries and medication she will not be able to afford." (R. at 681-82.) Plaintiff was advised to begin a regimen of psychiatric medications, which she refused, along with cognitive behavioral therapy. (R. at 682.)

In April of 2014, Plaintiff saw Elaine Kunigonis, APN-BC, at Cape Counseling, reporting that she wanted to try medication to deal with stress. (R. at 834.) Plaintiff reported "periods of difficulty with short-term memory loss due to increased agitation and anxiety," "increased napping during the day and decreased sleeping at night," and poor motivation, and described her depression, anxiety, and irritability as "between 8 and 9" on a scale of 0-10. (R. at 836-37.) Ms. Kunigonis noted that Plaintiff was engaged throughout the session and gave detailed answers, that she was oriented to time, place, and person, and that she was able to spell "world" forward and backward without any difficulty. (R. at 836.) Plaintiff as assigned a GAF score of 55, diagnosed with "posttraumatic stress disorder" and "mood disorder NOS," prescribed Effexor, and instructed to continue with therapy. (R. at 837.)

### 3. Plaintiff's Activities

Plaintiff testified before the ALJ that she goes to the gym and church every day, and often to the library and out shopping afterwards. (R. at 81; see also R. at 429.) She likes to read and write and she does them "very well." (R. at 433.) In her

10

free time, she listens to music, watches television, and talks to her friends on the phone. (R. at 583.) Plaintiff drives locally. (R. at 85.) Plaintiff noted that she cannot stand for more than 20 minutes, sit for more than 45 minutes, or walk for more than 20 minutes. (R. at 434.)

Plaintiff lives alone and noted that she has no problems with personal care. (R. at 430.) She stated on her disability application that she cannot prepare "full course meals" and that she needs assistance with household chores (R. at 430-32) but reported to Dr. Iofin that the "instrumental activities of daily living, included but not limited to cooking, cleaning, vacuuming, laundry, etc. are done 100% by her." (R. at 583.)

### 4. State Agency Consultants

Plaintiff's treatment records were reviewed by state agency physicians and psychiatrists in November of 2012 and February of 2013. (R. at 89-102, 104-118.)

In November 2012, Dr. Britton opined that Plaintiff had "mild" restriction on activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. at 97-98.) Dr. Park opined that Plaintiff could frequently lift or carry 10 pounds, occasionally lift or carry 20 pounds, and sit or stand "with normal breaks" for 6 out of 8 hours in a work day. (R. at 99.)

11

In February 2013, Dr. Stanford agreed that Plaintiff's
anxiety was non severe and noted the same mild restrictions on
activities of daily living, difficulties in maintaining social
functioning, and difficulties in maintaining concentration,
persistence or pace. (R. at 112-13.) Dr. Sheehy noted that
Plaintiff's symptoms were not worsening and agreed with Dr.
Park's RFC assessment. (R. at 114-15.)

**C. ALJ Decision**

In a comprehensive and detailed written decision dated
September 18, 2014 (R. at 27-37), ALJ Barrett found that
Plaintiff was not disabled within the meaning of the Social
Security Act at any time through the date of the decision
because, consistent with her age, education, work experience,
and RFC, she was capable of performing past relevant work as a
bookkeeper. (R. at 37.)

At the first stage of the five-step sequential evaluation
process, the ALJ determined that the Plaintiff had not engaged
in substantial gainful activity since September 11, 2011, the
alleged onset date of disability. (R. at 29.)

At step two, the ALJ determined that Plaintiff suffered
from the following "severe impairments: arthritis of lumbar
spine and left knee, and obesity." (R. at 29.) The ALJ found
that Plaintiff's asthma, diabetes mellitus Type II, and
hypertension were not severe because "these conditions are

12

controlled with medication and there is no objective medical evidence, which documents the existence or severity of functional limitations caused by these alleged impairments. (Id.) Likewise, the ALJ determined that Plaintiff's alleged depression and PTSD were not severe because "the claimant has only mild symptoms or mild difficulties in social, or occupational functioning." (Id.) Despite recognizing Plaintiff's physical impairments as severe, at step three, the ALJ concluded that Plaintiff's impairments did not meet, or equal in severity, any impairment found in the Listing of Impairments set forth in 20 C.F.R. Part 404. (R. at 32.)

At step four, the ALJ determined that Plaintiff possessed the residual functioning capacity to perform sedentary work, except "occasional stooping, kneeling, crouching, crawling and climbing and she needs to avoid extreme cold temperatures, chemicals, and other pulmonary irritants." (R. at 34.) Although the ALJ found that Plaintiff's physical and mental impairments caused the alleged symptoms, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms not credible. (R. at 35.)

In support of these findings, the ALJ evaluated Plaintiff's testimony; the observations and opinions of treating physicians; and Plaintiff's treatment notes, record of care, and her use of medication. (R. at 29-36.) Specifically, with respect to

Plaintiff's mild mental limitations, the ALJ noted that
Plaintiff's GAF scores were generally in the "mild" range; that
she had excellent memory, concentration, judgment and insight;
that she had friends and a good relationship with her family,
and regularly engaged in activities like going to the gym,
church, shopping; that she had normal mood, affect, and
attention span; and that she was able to live alone without
assistance. (R. at 30, 32-33.) In particular, the ALJ noted that
Plaintiff continued to actively look for work. (R. at 36.) With
respect to Plaintiff's mobility, and her ability to sit and
stand, the ALJ noted that despite her complaints of painful
symptoms, Plaintiff does not take any medication for her back
pain, that she has no evidence "of lumbar radiculopathy in the
form of muscle weakness, atrophy, reflex depression or sensory
loss," and that she reported to some treating physicians only
"occasional back pain." (R. at 30-31, 35.) He specifically
pointed to testimony from Dr. Cincotta that "lifting, twisting
and standing for long periods of time were the only restrictions
placed on" Plaintiff, and from Nurse Practitioner Hallowell that
Plaintiff could frequently sit and occasionally stand or walk.
(R. at 30, 31, 32, 35.) With respect to Plaintiff's upper
extremity limitations, the ALJ relied on treatment notes
indicating that Plaintiff could frequently use her hands for
fine finger movements and occasionally push and pull with her

14

arms. (R. at 32.) The ALJ noted that Plaintiff "continued to go
to the gym and run errands," as well as drive a car. (R. at 32,
35.)

Ultimately, the ALJ determined that Plaintiff could return
to her past relevant work as a bookkeeper, because it is a
sedentary exertional level and its mental and physical demands
are consistent with her limitations. (R. at 37.)

**III. STANDARD OF REVIEW**

This Court reviews the Commissioner's decision pursuant to
42 U.S.C. § 405(g). The Court's review is deferential to the
Commissioner's decision, and the Court must uphold the
Commissioner's factual findings where they are supported by
"substantial evidence." 42 U.S.C. § 405(g); Fargnoli v.
Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r
of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial
evidence is defined as "more than a mere scintilla," meaning
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Richardson v. Perales, 402
U.S. 389, 400 (1971); Hagans v. Comm'r of Soc. Sec., 694 F.3d
287, 292 (3d Cir. 2012) (using the same language as Richardson).
Therefore, if the ALJ's findings of fact are supported by
substantial evidence, the reviewing court is bound by those
findings, whether or not it would have made the same
determination. Fargnoli, 247 F.3d at 38. The Court may not weigh

15

the evidence or substitute its own conclusions for those of the
ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir.
2011). Remand is not required where it would not affect the
outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553
(3d Cir. 2005).

## IV. DISCUSSION

### A. Legal standard for determination of disability

In order to establish a disability for the purpose of
disability insurance benefits, a claimant must demonstrate a
"medically determinable basis for an impairment that prevents
him from engaging in any 'substantial gainful activity' for a
statutory twelve-month period." Plummer v. Apfel, 186 F.3d 422,
426 (3d Cir. 1999); 42 U.S.C. § 423(d)(1). A claimant lacks the
ability to engage in any substantial activity "only if his
physical or mental impairment or impairments are of such
severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy." Plummer, 186 F.3d at 427–428;
42 U.S.C. § 423(d)(2)(A).

The Commissioner reviews claims of disability in accordance
with the sequential five-step process set forth in 20 C.F.R. §
404.1520. In step one, the Commissioner determines whether the
claimant currently engages in "substantial gainful activity." 20

C.F.R. § 1520(b). Present engagement in substantial activity precludes an award of disability benefits. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In step two, the claimant must demonstrate that the claimant suffers from a "severe impairment." 20 C.F.R. § 1520(c). Impairments lacking sufficient severity render the claimant ineligible for disability benefits. See Plummer, 186 F.3d at 428. Step three requires the Commissioner to compare medical evidence of the claimant's impairment to the list of impairments presumptively severe enough to preclude any gainful activity. 20 C.F.R. § 1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Plummer, 186 F.3d at 428. Step four requires the ALJ to consider whether the claimant retains the ability to perform past relevant work. 20 C.F.R. § 1520(e). If the claimant's impairments render the claimant unable to return to the claimant's prior occupation, the ALJ will consider whether the claimant possesses the capability to perform other work existing in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 1520(g); 20 C.F.R. 404.1560(c).

**B. The ALJ did not err by not including Plaintiff's mild mental impairments at step four of the sequential analysis.**

17

First, Plaintiff argues that ALJ should have accounted for her mild limitations with regard to maintaining activities of daily living, social functioning, and concentration, persistence, and pace at step four of the sequential analysis. While Plaintiff does not challenge the ALJ's finding at step two that her mental impairments are not severe, she takes the position that these limitations should still have been incorporated into her RFC assessment.

When a claimant has more than one impairment, the ALJ must consider "all" of her medically determinable impairments in formulating her RFC, even ones which are not "severe." 20 C.F.R. 404.1545(a)(2); see also SSR 96-8. However, "the ALJ need only include in the RFC those limitations which he finds credible." Garrett v. Comm'r of Soc. Sec., 274 Fed. Appx. 159, 163 (3d Cir. Apr. 17, 2008) (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000)). Where the ALJ concludes that a claimant's deficiency is "so minimal or negligible that . . . it would not limit her ability" to perform required work tasks, the ALJ may exclude that deficiency or limitation from the RFC without error. Ramirez v. Barnhart, 372 F.3d 546, 555 (3d Cir. 2004); see also Lee v. Comm'r of Soc. Sec., 248 Fed. Appx. 458, 462 (3d Cir. Sept. 28, 2007) ("There was no need to include a mental impairment in the hypothetical as the determination that

18

her condition was not severe was supported by substantial evidence.").

In the first instance, Plaintiff's contention that the ALJ failed to consider her alleged depression, anxiety, and PTSD is undermined by the ALJ's opinion itself, which includes a thorough discussion of treatment notes from her therapists and psychiatrists. In particular, the ALJ explicitly considered her GAF scores; notes about her demeanor and affect from treating sources; results from memory and concentration tasks during psychological evaluations; lack of history of medication; absence of episodes of decompensation; and Plaintiff's own reports of her activities of daily living and social functioning, in coming to the conclusion that she does not have "a severe mental impairment that would have significantly limited her ability to perform basic work activities." (R. at 29-33.)

Secondly, even if the ALJ did not discuss the impact of the admittedly mild limitations from Plaintiff's mental impairments at the RFC stage, despite having discussed them at length elsewhere in the opinion, this omission is not reversible error because the ALJ was entitled to not include "minimal or negligible" deficiencies in the RFC. Ramirez, 372 F.3d at 555. The ALJ concluded that Plaintiff had only a mild restriction in her activities of daily living, noting that she reported that

19

she lives alone and does all of the cooking, cleaning, and laundry, that she has no difficulties with maintaining personal care, that she drives, and that she regularly goes to the church, gym, and shops. (R. at 32.) Likewise, the ALJ concluded that Plaintiff had only mild restriction in social functioning based on her report that "she has no difficulties getting along with neighbors, family, friends, or authority figures," that she has good family relationships, and that she regularly goes to the church, gym, and shops. (R. at 33.) And the ALJ concluded that Plaintiff had only mild restriction in her concentration, persistence, or pace based on treatment notes finding that her "memory is excellent; and her concentration is intact." (Id.) Finally, the ALJ noted that Plaintiff had collected unemployment benefits, continued to look for work, and gone on job interviews, presenting herself as willing and able to work, undermining her assertion that she is disabled. (R. at 36.) Based on this record, there is substantial evidence that Plaintiff's allegations of further limitation were not credible.

Additionally, Plaintiff has not offered any support for her position that someone with a mild limitation in three broad functional areas, who has never suffered episodes of decompensation, is incapable of performing a job rated with a skill level of six, as her past relevant work as a bookkeeper is. (R. at 37.) "The claimant bears the burden of demonstrating

an inability to return to her past relevant work." <u>Burnett</u>, 220 F.3d at 118.

Because the ALJ need only include credible limitations in the RFC, and because there is substantial evidence supporting the ALJ's conclusion that Plaintiff's mental impairments would cause only mild limitations on her daily life and not impact her work, the Court will not remand on this basis.

### C. The ALJ did not err by failing to include a sit-stand option as part of Plaintiff's RFC assessment.

Next, Plaintiff argues that the ALJ erred by not including a sit-stand option as part of her RFC assessment. Plaintiff points to records from Dr. Cincotta in which he expressed the opinion that Plaintiff "cannot remain in one position for any length of time" and that the "ability to stand and stretch from time to time would be important" as support for her position that such a limitation was necessary for her RFC.

The Court rejects Plaintiff's arguments for two reasons. First, despite this recommendation from Plaintiff's physician, the ALJ was empowered to ignore it in the face of other evidence in the record. "[W]here a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation" in a hypothetical to a vocational expert or in the RFC formulation. <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 615 (3d Cir.

21

2014). Here, Dr. Cincotta's opinion that Plaintiff would require a sit-stand option on the one hand exists alongside substantial evidence, on the other, that standing, walking, or twisting were the only restrictions on Plaintiff's mobility. For example, a physical therapist opined that Plaintiff would be capable of sitting for 5-6 hours and standing for 1-2 hours of the work day (R. at 512); Dr. Wilchfort opined that "Any job that is going to require a lot of standing would be difficult for" Plaintiff but assessed no other restrictions (R. at 575); Nurse Practitioner Hallowell rated Plaintiff as being capable of "frequently" sitting and "occasionally" standing and walking (R. at 680). Indeed, Dr. Cincotta himself noted that Plaintiff was "physically capable and medically cleared to go to work" and that "she will be fine if sitting." (R. at 508.) Where, as here, there is substantial evidence supporting the ALJ's discretionary decision, the district court may not reweigh the evidence "or substitute [our own] conclusions for those of the fact-finder." Rutherford, 399 F.3d at 552.

    Additionally, the Court will not remand for not including a sit-stand option in the RFC because Plaintiff has again not met her burden of showing that she cannot perform the job of bookkeeper even with this restriction. As the Acting Commissioner pointed out in her brief, agency policy contemplates that "[t]here are some jobs in the national economy

– typically professional and managerial ones – in which a person can sit or stand with a degree of choice" SSR 83-12, and the job of bookkeeper may very well be one of those positions. See Hardy v. Colvin, Civil No. 13-752, 2015 WL 5000130, at *9 (D. Del. Aug. 21, 2014) (vocational expert testified that receptionist, bookkeeper is a sedentary job that can be performed with a sit/stand at will option). Because remand is not required where it would not affect the outcome of the case, the Court will not overturn the ALJ's determination on this basis. Rutherford, 399 F.3d at 553.

### D. The ALJ did not err by failing to impose any manipulative limitations as part of Plaintiff's RFC assessment.

Finally, Plaintiff argues that the ALJ erred by not imposing any manipulative limitations as part of her RFC assessment. Plaintiff contends that evidence of left rotator cuff tendonitis, numbness in hands, neck pain, carpal tunnel syndrome, and a limitation to occasional firm and fine hand grasping mandates that she cannot perform the "frequent reaching, handling, and fingering" required by the DOT for the position of bookkeeper.

Again, the Court disagrees, in light of other evidence in the record showing that Plaintiff has adequate use of her arms and hands. An EMG examination revealed mild carpal tunnel syndrome in both hands but no evidence of a cervical

radiculopathy or other general neuromuscular disorder in the
upper extremities. (R. at 839.) Dr. Wilchfort rated Plaintiff's
grip and pinch strength as 5/5 in both of her hands and noted
that she could separate papers and button buttons. (R. at 578.)
A physical therapist found that Plaintiff could frequently
perform simple grasping with both hands and occasionally perform
firm or fine grasping with both hands, and noted that Plaintiff
reported no pain in her hands during the examination. (R. at
512, 513.) Nurse Practitioner Hallowell noted that Plaintiff
could frequently perform fine finger movements. (R. at 680.)
Other treating sources noted that Plaintiff's arm strength is
normal and that she had a normal range of motion, muscle tone,
and sensation. (R. at 542, 839.) Additionally, Plaintiff's
testimony about her daily activities is inconsistent with her
allegations of manipulative limitations. Plaintiff drives a
manual, stick-shift car, works out at the gym, shops, enjoys
writing, types, talks on the phone, and can perform personal
care activities by herself. (See R. at 51, 82-84, 429, 431-33,
583, 629.) While Nurse Practitioner Hallowell's opinion, alone,
may not be accorded controlling weight per agency rules, the ALJ
noted that her "assessment is reasonably persuasive given the
totality of the record." (R. at 36.) Where, as here, there is
substantial evidence supporting the ALJ's determination, the
district court may not reweigh the evidence "or substitute [our

own] conclusions for those of the fact-finder." <u>Rutherford</u>, 399 F.3d at 552. Accordingly, the Court will not remand on this basis.

**V. CONCLUSION**

For all of these reasons, the Court finds that substantial evidence supports the ALJ's decision to deny Plaintiff benefits, and that it should be affirmed.  An accompanying Order will be entered.

**July 24, 2017**                                  **  s/ Jerome B. Simandle  **
Date                                               JEROME B. SIMANDLE
                                                   U.S. District Judge